UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **Roderick Napoleon Harris**<br><br>v.<br><br><br><br>**Bobby Lumpkin, Director TDCJ** | No. 3:20-CV-3702-C<br><br>(Death Penalty Case) |

# Mowla's Response to the Court's Directive in the Order (ECF-9)

**Michael Mowla**
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Harris

1

**To the Honorable District Judge and Magistrate Judge:**

Michael Mowla, Attorney for Harris, files this Response to the Court's directive in the Order (ECF-9):

I.  **Response**

1. On February 10, 2021, this Court directed me (Mowla) to advise the Court in writing "whether any attorney sought (my) permission to communicate with his client (Mr. Harris) (Order, ECF-9). This Court cited Tex. Disc. Rule Prof. Conduct 4.02(a), which provides, "In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

2. The short answer to the Court's question is that I spoke to Mr. Wolff one time about this case. The call occurred on January 27, 2021. During this call, I do not recall Mr. Wolff asking me for permission for another attorney to speak to Mr. Harris. By "another attorney" I mean an attorney other than one who has previously represented Mr. Harris. I do not recall Lee Kovarsky's name during the call. Because Mr. Wolff told me that Mr. Harris would waive any potential conflict, I understood that before I spoke to Mr. Wolff on January 27, 2021, Mr. Wolff, Gwendolyn Payton, or both had already spoken to Mr. Harris about the issue.

3. I have never spoken to or otherwise communicated with Gwendolyn Payton or Adam Charnes. I have never spoken to or otherwise communicated with

Lee Kovarsky about this case. The last communication I had with Mr. Kovarsky was a few email exchanges in November 2015 about an unrelated case when he was a professor at the University of Maryland School of Law.

4. To put my response in context and so that the Court is clear about what I know about what has occurred since my appointment, some background facts may be helpful: On January 22, 2021, I received a call from Ms. Kim Schaefer, Attorney Advisor for this Court. Ms. Schaefer asked me if I could accept an appointment in a death penalty case for a petition to be filed under 28 U.S.C. § 2254. Because I understood that most of these cases were being assigned to the Federal Public Defender's Capital Habeas Unit ("CHU"), my concern was whether this case had been previously appointed to an attorney with the CHU or another attorney, who then withdrew. Because of the one-year statute of limitation imposed by 28 U.S.C. § 2244(d), I wanted to be certain that this was not a case where I would have only a few months to investigate, draft, and file a petition under 28 U.S.C. § 2254.

5. Ms. Schaeffer informed me that the order entered by the Texas Court of Criminal Appeals denying the state habeas application was entered on December 16, 2020. This would allow me until December 15, 2021 to file the petition under 28 U.S.C. § 2254. At that time, I had not yet read OCFW's motion (ECF-1). I had not communicated with Mr. Harris, Mr. Wolff, or any other person about the case. I agreed to accept the appointment. On January 25, 2021, this Court appointed me as lead counsel (ECF-4) and I began performing background work. I had no knowledge of the issues that have since arisen.

6.  On January 27, 2021, I received a voicemail from an attorney about this case. I knew this attorney and to my knowledge, she has not worked on this case. I spoke to her that day (January 27, 2021). She told me that much of the work performed by Payton and Charnes had been at the end of the state habeas proceeding, that Ms. Payton had a "good working relationship" with Mr. Harris, and that she (the attorney) did not believe there was any potential conflict of interest if Ms. Payton were appointed now. When I asked this attorney specific questions, she suggested that I speak to Mr. Wolff.

7.  Later that day (January 27, 2021), I spoke to Mr. Wolff. I have known him since shortly after he became the director of the OCFW. Mr. Wolff told me that he did not believe there was a potential conflict of interest if Ms. Payton were appointed lead counsel. Mr. Wolff told me that he was going to file a motion for reconsideration of ECF-1. Based on my conversation with Mr. Wolff and what I had read so far, I was concerned about potential conflict issues if Ms. Payton were appointed lead counsel. The issues pertain to *Martinez v. Ryan*, 132 S.Ct. 1309, 1318 (2012), which allows a federal habeas petitioner to establish cause to excuse a procedural default as to an ineffective assistance of counsel ("IAC") claim by showing: (1) state habeas counsel was constitutionally deficient in failing to include the claim in his first state habeas application, and (2) the underlying IAC claim is "substantial," meaning that it has "some merit," and *Trevino v. Thaler*, 133 S.Ct. 1911, 1921 (2013) (applying *Martinez* to a Texas death penalty case).

8.  But based on Mr. Wolff's representations, I told him that **I would not**

**object or agree** to Ms. Payton being appointed as lead counsel and would leave it up to this Court. I would "remain silent" and allow this Court to sort out this issue and would address it only if asked. I represent or have represented death penalty clients as lead counsel in state and federal proceedings. Each time, I was appointed and I proceeded with my work. I have never faced this situation or heard of it occurring in another case. Thus, there is no "playbook" or prior experience from which I could draw to guide how I proceeded here.

9. On February 8, 2021, Mr. Wolff filed the Motion for Reconsideration (ECF-7). The attachment to the motion is an email from Lee Kovarsky to Ms. Payton dated February 5, 2021 in which Mr. Kovarksy states that "today I spoke with Roderick Harris by phone." Thus, the conversation between Kovarsky and Harris took place on February 5, 2021, after my January 27, 2021 conversation with Mr. Wolff. Again, because Mr. Wolff told me that Mr. Harris would waive any potential conflict, I had understood that Mr. Wolff, Ms. Payton, or both had already spoken to Mr. Harris about this issue before my call with Mr. Wolff. This was a reasonable conclusion since both represented him in the state habeas proceeding.

10. Regarding the language in the Order (ECF-7) about this Court striking the Motion for Reconsideration "without prejudice to Petitioner's filing any appropriate request for relief through his appointed counsel of record, Michael Mowla": having read the Motion for Reconsideration, I have additional concerns about Mr. Harris waiving any potential conflict should an issue under *Martinez/Trevino* arise. However, because this is outside the scope of the directive, I will address them

only if asked by the Court.

## II. Conclusion

I trust that this Response to the Court's directive in the Order (ECF-9) answers the Court's question.

Respectfully submitted,

Michael Mowla
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Harris

**/s/ Michael Mowla**
**Michael Mowla**

## III. Certificate of Service

I certify that on February 10, 2021, a copy of this document was delivered to the Texas Attorney General's Office by ECF and other persons registered to receive notice by ECF.

**/s/ Michael Mowla**
**Michael Mowla**
